**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Marshall Edwin Home, | ) No. CV-05-73-PHX-NVW |
| Plaintiff, | ) **ORDER** |
| vs. | ) |
| Corrections Corporation of America, et al., | ) |
| Defendants. | ) |

Before the court is Defendants' Motion for Summary Judgment (Doc. # 38), Plaintiff's Response to Defendants' Motion (Doc. # 41), Defendants' Reply to Plaintiff's Response (Doc. # 43), Defendants' Statement of Facts (Doc. # 37), Plaintiff's Statement of Facts (Doc. # 41), and Defendants' Supplemental Statement of Facts (Doc. # 44).

Defendants have moved for summary judgment, arguing that they have not violated Plaintiff's constitutional rights and that there are no disputed material facts. The issues before the court are (1) whether Plaintiff's action should have been brought as a *Bivens* action, (2) whether Plaintiff was required to, and failed to, exhaust his administrative remedies prior to bringing suit, (3) whether Plaintiff is improperly relying on respondeat superior liability for his claims, and (4) whether any of Plaintiff's constitutional claims survive summary judgment.

## I. Statement of Facts

The Corrections Corporation of America ("Corrections Corporation") is a private prison corporation that contracts with state and federal agencies for incarceration of those agencies' inmates. The Central Arizona Detention Center ("Detention Center") is the Corrections Corporation prison in which Plaintiff ("Home") was incarcerated on three different occasions: (1) between December 19, 2001, and December 26, 2001; (2) between August 9, 2001, and December 12, 2002; and (3) between February 5, 2003, and March 4, 2004. Defendants' Statement of Facts ("DSOF") at ¶ 28.

The Corrections Corporation and the Detention Center require that inmates be tested for tuberculosis upon entry into the facility, and that inmates be tested annually thereafter. DSOF at ¶ 8. At the initial intake, an inmate is screened for symptoms and must take a tuberculosis PPD skin test or provide written proof of a negative tuberculosis test performed in the preceding six months by a qualified medical provider. DSOF at ¶ 6. An inmate may then be housed in the general population. DSOF at ¶ 6. An inmate for whom the medical personnel cannot rule out tuberculosis–either because the inmate is exhibiting symptoms or because of the inmate's failure to provide written proof of a negative test in the previous six months–is housed in medical isolation cells until tuberculosis is ruled out. DSOF at ¶ 12.

The PPD skin test is the only test for identifying latent tuberculosis. Defendants' Supplemental Statement of Facts ("DSSOF") at ¶ 7. A chest x-ray rules out active tuberculosis. A sputum test also demonstrates active tuberculosis, but it takes six to eight weeks to get the results and is only fifty percent reliable. DSSOF at ¶ 11.

Upon entry to the Detention Center for a second time in August 2001, Home received a tuberculosis skin test. DSOF at ¶ 32. The results were negative. Home left the Detention Center in December 2002.

Home re-entered the Detention Center for a third time in February 2003. On this occasion, upon entry he was screened for tuberculosis but not tested. DSOF at ¶ 33. The

medical notes from the screening indicate that Home had last been tested for tuberculosis on August 9, 2002. DSOF at ¶ 31.

On August 6, 2003, Home refused to take an annual tuberculosis skin test to update the one from a year earlier or to undergo a chest x-ray to rule out active tuberculosis. DSOF at ¶ 34. Home informed the Detention Center's medical personnel that he had received a tuberculosis test at the Lompac Federal Correctional Center in California, where he had been for a portion of the time between his second and third stays at the Detention Center. DSOF at ¶ 29.

As a result of Home's refusal to undergo a tuberculosis skin test or a chest x-ray, Home was housed in medical isolation cells or the segregation unit between August 6, 2003, and December 1, 2003. DSOF at ¶ 37. On December 1, 2003, the Detention Center received medical clearance from the United States Marshall Service for Home, reflecting that he had received a negative tuberculosis skin test on January 31, 2003. DSOF at ¶ 40. Home was then released into the general prison population. Home voluntarily underwent a chest x-ray on January 30, 2004.

While Home was segregated from the general population, his attorney attempted to see him, but was unable to do so on at least three occasions. Plaintiff's Statement of Facts ("PSOF") at ¶ 2.

**II.   Legal Standard**

To defeat a motion for summary judgment, the opposing party must set forth specific facts showing that there is a genuine issue of material fact in dispute. Fed. R. Civ. P. 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. In the absence of such facts, "the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (citations omitted).

The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of any genuine issue of material fact. *Id.* Summary judgment is appropriate against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322. Although the initial burden is on the movant to show the absence of a genuine issue of material fact, this burden may be discharged by indicating to the court that there is an absence of evidence to support the nonmoving party's claims. *See Singletary v. Pennsylvania Dep't of Corr.*, 266 F.3d 186, 193 n.2 (3d Cir. 2001).

### III. Analysis

Defendants argue that Home's claims should be dismissed because (1) 42 U.S.C. § 1983 is not the proper statute under which to seek money damages from Defendants; (2) Home failed to exhaust his administrative remedies; (3) Home improperly relies on respondeat superior liability for his claims against Defendants Stolc and Carmona; and (4) the Defendants did not violate Home's constitutional rights when he was segregated. Each argument is addressed in turn.

#### 1. 42 U.S.C. § 1983

Defendants argue that a federal prisoner cannot sue prison personnel under 42 U.S.C. § 1983. Defendants are correct.

A federal prisoner may bring an action against a federal employee at that prison under *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971). *See Agyeman v. Corrs. Corp. of Am.*, 390 F.3d 1101, 1104 (9th Cir. 2004) ("[T]o the extent that Agyeman sought recovery from individual employees of the Corrections corporation, the case had to be brought as a *Bivens* action.") (citations omitted). Because this issue was addressed at the

- 4 -

case management hearing, Home's claims will be treated as being brought under *Bivens*.[1] Therefore, as to Defendants Stolc and Carmona, they are properly named parties in a *Bivens* action, and summary judgment is denied on this ground.

However, Corrections Corporation of America, a private prison, cannot be sued under *Bivens*. *Correctional Servs. Corp. v. Malesko*, 534 U.S. 61, 63 (2001) (declining to apply *Bivens* to private corporations); *see also Agyeman*, 390 F.3d at 1103-04 ("[T]o the extent that Agyeman sought to hold Corrections Corporation itself liable, the case could not be brought under *Bivens* . . . since Corrections Corporation is a private corporation. . . . Rather, Agyeman could have brought a suit against the United States under the Federal Tort Claims Act, 28 U.S.C. §§1346(b)(1). . . . Alternatively, he could have sued the corporation directly in tort and he could have sought injunctive relief.") (citations omitted).  Summary judgment will be granted for Defendant Corrections Corporation of America on all claims alleged.

**2.     Exhaustion**

Defendants argue that Home failed to exhaust his remedies as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e, and assert that the PLRA applies to claims brought by former prisoners challenging the prison conditions at the time of their incarceration.

Although the Ninth Circuit has not directly addressed the facts of this case–whether exhaustion is required when a former prisoner files an action after being released–it addressed a similar issue in *Page v. Torrey*, 201 F.3d 1136 (9th Cir. 2000).  The *Page* court concluded that a person civilly committed pursuant to California's Sexually Violent Predators Act is not a prisoner within the meaning of 42 U.S.C. § 1997e and therefore does not need to exhaust his claim prior to bringing suit.  *Id.* at 1139-40.  The court the went on to state that "only individuals who, at the time they seek to file their civil actions, are

---

[1] Granting Home leave to amend his complaint would only delay the ultimate resolution of this case. Therefore, Home's claims will be treated as *Bivens* claims where relevant.

detained as a result of being accused of, convicted of, or sentenced for criminal offenses are 'prisoners' within the definition of [42] U.S.C. § 1997e and [28] U.S.C. § 1915." *Id.* at 1140. In light of *Page*, it is unlikely that the Ninth Circuit would interpret "prisoner" to apply to plaintiffs filing suits after being released from prison.

Moreover, the circuits that have reached this issue have uniformly concluded that exhaustion is not required when a former prisoner brings an action after his release for alleged constitutional infringements occurring while in prison. *See Norton v. City of Marietta*, 432 F.3d 1145, 1150 (10th Cir. 2005) (not requiring exhaustion when a former prisoner brings an action regarding conditions while in prison); *Nerness v. Johnson*, 401 F.3d 874, 876 (8th Cir. 2005) (holding that exhaustion is not required when a plaintiff is not incarcerated at the time he filed his complaint); *Ahmed v. Dragovich*, 297 F.3d 201, 210 (3d Cir. 2002) (same); *Harris v. Garner*, 216 F.3d 970, 979-80 (11th Cir. 2000) (en banc) (same); *Greig v. Goord*, 169 F.3d 165, 167 (2d Cir. 1999) (same).

Therefore, in light of *Page* and the overwhelming consensus that the PLRA does not apply to claims by former prisoners challenging prison conditions, Home was not required to exhaust administrative remedies prior to bringing this action.

### 3. Supervisory Liability

Defendants argue that summary judgment should be granted in favor of Defendants Stolc and Carmona because Home is improperly relying on their supervisory roles to assert liability when there is no respondeat superior liability in a *Bivens* action. While there is no respondeat superior liability in a *Bivens* action, *see Terrell v. Brewer*, 935 F.2d 1015, 1018 (9th Cir. 1991), both Stolc and Carmona were actively involved in the process of segregating Home. They spoke with Home about his need to undergo a tuberculosis skin test or a chest x-ray before he could be released into the general prison population. In addition, they supported and enforced the medical department's decision to segregate Home. *See* Doc. # 37, Exhibit 1, at 52:21-23 (Stolc, responding to question whether he made decision to

1  segregate Home: "No, that decision is made by the medical department. I just support that
2  – I just supported that decision").

3  Defendants Stolc and Carmona have thus not demonstrated that Home is relying on
4  respondeat superior as his basis for liability against them.

### 4. Constitutional Claims

Defendants argue that segregating Home because of his failure to undergo a tuberculosis skin test or x-ray does not amount to cruel and unusual punishment. Defendants also assert that Home did not suffer "actual harm" as a result of his attorney's inability to meet with him on three occasions because of his segregation.

#### a. Segregation

Defendants argue that the decision to segregate Home because of his refusal to undergo tuberculosis testing comports with *Turner v. Safley*, 482 U.S. 78, 89 (1987), which upholds prison regulations that are "reasonably related" to the advancement of a legitimate penological interest. The *Turner* Court found four factors relevant in determining the constitutionality of the prison regulation: (1) whether there is a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it; (2) whether there are alternative means of exercising the asserted right; (3) the impact of accommodating the asserted right on prison staff, other inmates, and prison resources; and (4) whether there are other alternatives demonstrating that the regulation is not reasonable. *Id.* at 89-91.

Plaintiff does not challenge the legitimacy of the Detention Center's tuberculosis testing policy. Moreover, it is clear that prisons have a legitimate interest in testing prisoners for infectious diseases such as tuberculosis. *See Thompson v. Los Angeles*, 885 F.2d 1439, 1447 (9th Cir. 1989) ("We find, however, the County's interest of diagnosing severe medical problems to prevent transmission of serious disease among the general jail population is sufficiently compelling to preclude a finding that such searches are unreasonable within the

- 7 -

1 meaning of the Fourth Amendment.") (citations omitted); *Hasenmeier-McCarthy v. Rose*, 986 F. Supp. 464, 467 (S.D. Ohio 1998) ("It is beyond dispute that tuberculosis represents a public health threat to both inmates and prison personnel."). In addition, it is well recognized that tuberculosis is much more likely to spread in prisons. *Id.*

Defendants also cite numerous decisions upholding the constitutionality of segregating from the general prison population inmates who refuses to take a PPD skin test. *See, e.g., Africa v. Horn*, 998 F. Supp. 557, 560 (D. Pa. 1998) (determining that prison's decision to segregate an inmate who refused to take a PPD skin test for a year did not violate the prisoner's constitutional rights); *Westbrook v. Wilson*, 896 F. Supp. 504, 505 (D. Md. 1995) (finding constitutionally permissible under *Turner* the segregation of inmates who refused to take a PPD skin test). Home argues that these cases are distinguishable because his reason for refusing to undergo the PPD skin test or a chest x-ray was because he had taken a PPD skin test within the previous year at a different prison facility. Home, however, does not cite any authority supporting this distinction.

Home did not provide the medical personnel with any medical documentation of his previous PPD skin test and instead asked the medical personnel at the Detention Center to take him at his word. This is in clear conflict with the Detention Center's policy for tuberculosis screening. Given the unquestioned importance of tuberculosis testing in the prison setting, Home's segregation because of his refusal to take a PPD skin test or undergo a chest x-ray does not demonstrate cruel and unusual punishment. Summary judgment is granted on this claim.

### b. Inability to Meet With Counsel

Defendants argue that even though Home was prevented from meeting with his attorney on three occasions while he was segregated from the general prison population, he has failed to show that this resulted in actual harm, as required by *Sands v. Lewis*, 886 F.2d

1166, 1171 (9th Cir. 1989).[2]  In support of this claim, Defendants have shown that Home ultimately prevailed in the relevant criminal action.

Home responds by arguing that he suffered harm because resolution of his criminal case was delayed.  However, there is nothing in the record to support this claim.  Even Home's attorney, in her affidavit, does not aver that the dismissal of Home's pending criminal case was delayed because of the fact that she was unable to meet with Home on those three occasions.  In fact, in a motion that she filed in Home's criminal proceedings, she specifically stated that "[i]t is difficult to calculate how much, if at all, HOME's trial has been delayed due to his 4 month isolation."  Doc. # 41, Exhibit 4 at 4.  Because Home prevailed in his criminal action, and because there is no evidence that his segregation at the Detention Center somehow caused this victory to be delayed, reasonable jurors could not find that Home suffered "actual harm."  Summary judgment is granted on this claim.

### c.  Due Process Claim

Home's attempts to assert a procedural due process claim, citing *Sandin v. Connor*, 515 U.S. 472 (1995).  In *Sandin*, the Court determined that Sandin did not have a protectable liberty interest when he was housed in disciplinary segregation for thirty days because the disciplinary segregation was essentially equivalent to administrative segregation or protective custody.  *Id.* at 486.  The test articulated by the *Sandin* Court for determining whether a prisoner has a protectable liberty interest is whether the segregation "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 484.

Assuming *Sandin* applies, Home has failed to make the required showing.  The only "significant hardship" Home articulates is that he could not exercise while he was in medical isolation and that he could not see his attorney on three occasions.  However, Home

---

[2]The record is clear that on three occasions Home's attorney attempted to meet with him and was unable to do so.  Doc. # 41, Exhibit 1 at ¶ 6.

- 9 -

exercised while he was in administrative segregation and could make phone calls to his attorney the entire time. He also received daily meals and any necessary medical attention.

A reasonable juror could not conclude that on this showing Home's stay in administrative segregation and medical isolation imposed "atypical and significant hardship in relation to the ordinary incidents of prison life." Moreover, Home could have reentered the general prison population whenever he chose to undergo a PPD skin test or a chest x-ray.

To the extent that Home asserts a procedural due process claim, Defendants' motion for summary judgment is granted.

IT IS THEREFORE ORDERED that Defendants' Motion for Summary Judgment, Doc. # 38, is granted.

IT IS FURTHER ORDERED that the clerk enter judgment in favor of all Defendants and that Plaintiff Home take nothing on his complaint, and the Clerk is directed to terminate this action.

DATED this 20th day of June 2006.

_____
Neil V. Wake
United States District Judge